## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

JAVARIS VANDIVER, LARRY )
KING, on behalf of themselves and all )
others similarly situated )
                                                           )

    **PLAINTIFFS,**                 )        **CIVIL ACTION NO.**
                                             )        **2:07-CV-425-MHT**

**v.**                                             )

                                             )

**MERIDIAN IQ SERVICES, INC.** )
**(dba MERIDIAN I.Q.),** )
                                             )

    **DEFENDANT.**              )

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO FACILITATE CLASS NOTICE PURSUANT TO 29 U.S.C. § 216(b)

Defendant Meridian IQ Services Inc. (d/b/a Meridian IQ) ("MIQ") submits this memorandum in opposition to Plaintiffs' Motion to Facilitate Class Notice Pursuant to 29 U.S.C. § 216(b) (hereinafter "Plaintiffs' Motion"). Plaintiffs' Motion seeks class notice for all of MIQ's current and former employees nationwide, without any showing that such individuals are similarly situated to Plaintiffs or providing any evidence that other employees seek to join this action. As shown below, this case will require the individualized application of multiple factors to determine whether the Motor Carrier Exemption to the Fair Labor Standards Act applies to individual MIQ employees. Plaintiffs have not met, and

cannot meet, their burden to establish that notice is appropriate in this case. Accordingly, Plaintiffs' Motion should be denied.

## I. BACKGROUND

### A.    Corporate Structure of Meridian IQ Services Inc.

MIQ, currently known as YRC Logistics, is a global logistics services company, which coordinates the movement of goods worldwide across multiple modes of the global supply chain. YRC Logistics currently has thirteen different United States facilities, with each facility employing a number of employees in a variety of positions (Affidavit of Chris Henry, attached hereto as Exhibit A, at ¶ 4). Each facility is under the direction of a different Facility Manager (*Id*.). The Facility Manager is allowed discretion over the job duties of the employees assigned to him or her and the job duties are altered based on the site, freight volume, and customer need (*Id*. at ¶ 6). Facility Managers report to the Director of Operations assigned to the region in which their facility is located (*Id*. at ¶ 4).

### B.    Legal Contentions of the Parties

This case involves a Fair Labor Standards Act ("FLSA") claim for overtime brought by Plaintiffs Javaris Vandiver and Larry King, former MIQ employees who worked as Team Members at MIQ's Montgomery, Alabama facility.[1]    On

---

[1] On October 15, 2007, Plaintiffs filed their Motion for Leave to File Amended Complaint. Plaintiffs' Amended Complaint seeks to add DeShawn Bailey, Preston Traylor, and Kelvin Jones as individual plaintiffs in the lawsuit. Defendant does not oppose the Motion for Leave to File Amended Complaint. However, Defendant disputes

May 15, 2007, Plaintiffs filed this lawsuit, claiming that MIQ improperly classified them as exempt employees and that they regularly worked in excess of forty hours per week (Complaint at ¶ 6). Plaintiffs claim that MIQ had a uniform policy and practice of requiring its employees to work overtime hours without paying them overtime compensation (*Id*.).

MIQ maintains that Plaintiffs were properly classified as exempt employees pursuant to the Motor Carrier Exemption, 29 U.S.C. § 213(b)(1), to the FLSA. Under this exemption, the FLSA's overtime provisions do not apply to any employee over whom the Secretary of Transportation has the power to establish qualifications and maximum hours of service pursuant to the Federal Motor Carrier Act. As a general matter, the Motor Carrier Exemption provides that transportation employees involved in activities affecting the safety of operation of a motor vehicle in the transportation of passengers or property in interstate commerce and who are subject to the power of the Department of Transportation,[2] are exempt. *See* 29 U.S.C. § 213(b)(1); *Morris v. McComb,* 332 U.S. 422 (1947). MIQ asserts that Plaintiffs were subject to the exemption because they were regularly involved in the loading of motor vehicles that affected the safe operation

whether Kelvin Jones was its employee and whether Plaintiffs' newly added causes of action state a claim upon which relief can be granted.
[2] The Secretary of Transportation's authority is over, and, thus, the Section 13(b)(1) overtime exemption applies to, employees who are: (1) Employed by a motor carrier or motor private carrier; and (2) Drivers, helpers, loaders, or mechanics whose duties affect the safety of operation of commercial motor vehicles in transportation on public highways in interstate or foreign commerce; and (3) Performing duties on commercial motor vehicles. 29 C.F.R. § 782.

of the vehicles and trailers in interstate commerce (*see* Exhibit A at ¶ 3).  While MIQ contends that each of the plaintiffs were properly classified as exempt employees pursuant to 29 U.S.C. § 213(b)(1), at the same time, application of the Motor Carrier Exemption inevitably requires a highly fact-specific inquiry into the exact job duties of each employee.  For these reasons, as well as those outlined herein, this case is not appropriate for collective treatment.

### C.    Plaintiffs' Motion for Collective Treatment

Plaintiffs now seek issuance of court supervised notice of their lawsuit to "all 'similarly situated' employees (current and former) of Defendant who worked for Defendant's logistics services . . . operation and who were subject to the uniform policy of not paying overtime compensation during the three (3) years prior to filing of the Complaint." (Plaintiffs' Motion at 1).  Plaintiffs claim that sending notice of their lawsuit to hundreds of individual employees throughout the United States will promote judicial economy through "efficient resolution" of the case "in one proceeding." (Plaintiffs' Memorandum at 6).  To the contrary, an efficient resolution would involve individual determinations of whether these individual Plaintiffs were properly classified as exempt.  Adding other claimants would serve only to create an unmanageable proceeding in which multiple individualized determinations of exempt status would be necessary.

Based on Plaintiffs' Motion and their allegations, Plaintiffs claim they have provided sufficient evidence to allow the Court to (1) designate collective action, (2) order that notice be given to potential opt-in plaintiffs, and (3) order MIQ to produce the names and addresses of potential opt-in plaintiffs nationwide. As explained herein, the allegations and evidence offered by Plaintiffs in support of their Motion stem solely from individuals who were formerly employed as Team Members and/or Team Leaders at MIQ's Montgomery, Alabama facility (*see* Exhibit A at ¶¶ 3, 5). Thus, the only evidence Plaintiffs have to offer relates solely to the working conditions at MIQ's Montgomery facility, rather than at MIQ's facilities nationwide. Plaintiffs do not present any evidence from any individual who worked as a logistics services employee at any of MIQ's several other facilities.

This Court has significant discretion in determining whether to conditionally certify a collective action as well as in deciding whether to allow notice to be given to potential opt-in plaintiffs. Because Plaintiffs failed to demonstrate that all of MIQ's logistics services employees from the last three years are similarly situated to Plaintiffs, collective treatment in this case is not warranted, and Plaintiffs' Motion should be denied.

## II.  COLLECTIVE ACTIONS UNDER 29 U.S.C. § 216(b)

Plaintiffs bring their Motion pursuant to § 216(b) of the FLSA, which authorizes suits by "one or more employees for and on behalf of themselves and other employees similarly situated."  29 U.S.C. § 216(b).  The burden of establishing the requirements for collective treatment and notice under 29 U.S.C. § 216(b) rests squarely with the Plaintiffs.  *Dybach v. State of Fla. Dep't. of Corrs.,* 942 F.2d 1562, 1567-68 (11th Cir. 1991).  The statutory test for whether notice can issue and an FLSA case can proceed as a collective action is whether the named plaintiffs and other employees who opt-in are "similarly situated." 29 U.S.C. § 216(b).  Plaintiffs bear the burden of showing that they are similarly situated. *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001).

Unlike class actions brought under Federal Rule of Civil Procedure 23, in a collective action, any person who wishes to join the suit must affirmatively "opt in" by expressly filing a consent to join the lawsuit in order to benefit from and be bound by the judgment in the suit.  *See Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1248 (11th Cir. 2003), *citing* 29 U.S.C. § 216(b). Unlike Rule 23, which provides that potential class members must be given notice of the class action so that they may opt-out of the class, 29 U.S.C. § 216(b) has no such procedural mechanism.[3]  Instead, with respect to collective actions brought under the FLSA, Congress was silent on the issue of notice and included no such

---

[3] Unlike a Rule 23 class, in FLSA actions, non-joining persons are not bound by the judgment or *res judicata,* and, as such, no due process concerns exist which would require notice.  *See Kinney Shoe Corp. v. Vorkes*, 564 F.2d 859, 864 (9th Cir. 1977).

provision in the statute. The United States Supreme Court, however, has held that district courts possess discretionary authority to oversee the notice process in appropriate cases. *Hoffman–LaRoche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989).

As a prerequisite to notice, Plaintiffs must establish, at a minimum, that other individuals desire to opt-in to the case and that they are similarly situated with respect to their job requirements and pay provisions. *Dybach*, 942 F.2d at 1567-68; *see also Haynes v. Singer Co.*, 696 F.2d 884, 887 (11th Cir. 1983); *Horne v. United Servs. Automobile Assoc.*, 279 F. Supp. 2d 1231, 1234 (M.D. Ala. 2003); *Marsh v. Butler County Sch. Sys.*, 242 F. Supp. 2d 1086, 1091 (M.D. Ala. 2002). The Eleventh Circuit has suggested, but not expressly required, that district courts utilize a two-tiered approach to assess the appropriateness of certification under § 216(b). Under the two-tiered approach, the district court first examines whether it should authorize notice, and second, whether the case should proceed as a collective action. The ultimate decision regarding whether to send notice or certify a collective action lies within the sound discretion of the trial court. *See, e.g., Hipp*, 252 F.3d at 1218.

The giving of notice to similarly situated employees is <u>not</u> mandatory and must be exercised with discretion and only in an appropriate case. *Haynes*, 696 F.2d at 886; *Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1268 (M.D. Ala. 2004); *Freeman v. Wal-Mart Stores, Inc.* 256 F. Supp. 2d 941, 944 (W.D. Ark. 2003).

Furthermore, even conditional class certification is not automatic, but is reserved for only those cases in which it is appropriate. *Hoffman–LaRoche, Inc.,* 493 U.S. at 169-71; *Freeman*, 256 F. Supp. 2d at 944 (denying conditional class certification); *Hall v. Burk*, 2002 WL 413901, at *2 (N.D. Tex. 2002) (denying conditional class certification and holding that the relevant inquiry is not whether the court has discretion to facilitate notice, but whether it is an appropriate case in which to do so).

Plaintiffs request class certification for all MIQ employees who worked for MIQ's logistics services operation within the past three (3) years. The applicable statute of limitations for the FLSA provision at issue is two years from the date of the alleged violation, unless the violation is found to be willful, in which case the statute is three years. 29 U.S.C. § 255(a). As such, Plaintiffs' request for a notice is predicated on MIQ's alleged willful violation of the FLSA provisions at issue. In a collective action, the action is deemed to have commenced on the date that each plaintiff files his or her written consent in the court in which the action was commenced. 29 U.S.C. § 256. Moreover, a claim is not asserted for statute of limitations purposes until such consent is filed with the court. *See, e.g., Atkins v. Gen. Motors Corp.*, 701 F.2d 1124, 1130 n.5 (5th Cir. 1983). As such, when a collective action is instituted, the limitations period for the putative opt-in plaintiff continues to run until she consents in writing to become a party plaintiff by filing

her written consent with the court.  *Id*.  Accordingly, Plaintiffs have requested that this Court certify the largest possible class available under the applicable provisions of the FLSA.

Although MIQ denies that FLSA violations occurred in this case, the ultimate issue of whether MIQ committed any such FLSA violations is not currently before the Court.  Instead, all this Court is asked to determine by way of Plaintiffs' Motion at issue is: (1) whether Plaintiffs have identified a definable and manageable putative opt-in class whose members are similarly situated to Plaintiffs; (2) if so, whether notice of this action should be given to potential opt-in class members; and (3) if notice is appropriate, whether Plaintiffs are entitled to discovery of contact information for potential class members.  Because Plaintiffs have not demonstrated that all of MIQ's current and former logistics employees working during the last three years are similarly situated to the named Plaintiffs in this case, Plaintiffs' Motion should be denied in its entirety.

## III.  COLLECTIVE TREATMENT IS NOT APPROPRIATE IN THIS CASE

For the reasons outlined herein, class certification and collective treatment is not appropriate in this case.  At this, the "notice stage" of the litigation, the court must make a determination based upon the pleadings and affidavits, if any, as to whether the persons to whom the proposed notice is to be given are "similarly situated."  *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207 (5th Cir. 1995) (discussing

and approving the trial court's "decertification" of the "class" and the dismissal of the opt-in plaintiffs' claims).  Although the court employs a relatively lenient standard at the notice stage, it must still make a factual determination regarding whether the proposed individuals comprising the "class" to which notice will be sent are "similarly situated" to Plaintiffs.  *Id.* at 1213-14.[4]  Because Plaintiffs are unable to demonstrate that the proposed putative class consists of individuals who are "similarly situated" to Plaintiffs, they fail to meet the requisite standard for conditional class certification, and Plaintiffs' Motion should be denied.

The only grounds advanced by Plaintiffs in support of their argument that the proposed class consists of "similarly situated" individuals is that other employees from MIQ's Montgomery, Alabama facility allegedly held the same job title as Plaintiffs Vandiver and King and performed the same job duties.  Plaintiffs do not specify what these job duties were other than loading and unloading goods at the facility.  Plaintiffs do not even attempt to argue that employees outside of the Montgomery, Alabama facility held job duties similar to Plaintiffs' or were similarly situated in any way.  Furthermore, the "opt-in employees" to which Plaintiffs cite are not potential class members at all; rather, these are individuals Plaintiffs have already sought to have added as Plaintiffs in their original lawsuit

---

[4] The *Mooney* court discussed two different proposed methodologies  which had been utilized in other FLSA and ADEA opt-in cases to assess the "similarly situated" requirement – (1) the use of Rule 23 factors, and (2) a "dissimilarity of situations" analysis.  *Id.*  Based upon the record before it, however, the court declined to embrace any particular methodology for resolving the "similarly situated" issue.  *Id.* at 1216.

pursuant to a Motion for Leave to Amend filed with the Court on October 15, 2007. Because Plaintiffs are unable to demonstrate that other employees desire to opt-in, or that the putative class of MIQ employees are similarly situated to the currently named plaintiffs in this lawsuit, Plaintiffs' Motion to Facilitate Class Notice must be denied.

**A.  Plaintiffs Failed to Meet Their Burden to Demonstrate the Existence of Similarly Situated Individuals Who Desire To Opt-In**

Under the applicable law, Plaintiffs bear the burden of seeking "court authorization to issue notice of the lawsuit to other potential plaintiffs." *Brooks v. BellSouth Telecomms., Inc.*, 164 F.R.D. 561, 566 (N.D. Ala. 1995), *aff'd*, 114 F.3d 1202 (11th Cir. 1997). Before intervening in the notice procedure, "the district court should satisfy itself that there are other employees of the [employer (1)] who desire to 'opt-in' and [(2)] who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Davis v. Charoen Pokphand (USA), Inc.*, 303 F. Supp. 2d 1272, 1275 (M.D. Ala. 2004) (Thompson, J.). In order to obtain authorization for such notice, Plaintiffs must first make a "preliminary factual showing that a similarly situated group of potential plaintiffs exists." *D-Anna v. M/A-Com., Inc.*, 903 F. Supp. 889, 894 (D. Md. 1995). In analyzing whether Plaintiffs have carried this burden, and in deciding whether to authorize notice to other potential plaintiffs, the court should be "mindful of its . . . responsibility to refrain from stirring up unwarranted litigation." *H & R Block,*

*Ltd. v. Housden*, 186 F.R.D. 399, 401 (E.D. Tex. 1999) (denying an employee's motion for certification and finding affidavits containing conclusory allegations to be insufficient evidence); *Freeman,* 256 F. Supp. 2d at 944-45 (denying a motion for conditional class certification and holding that "unsupported assertions of widespread violations are not sufficient to meet plaintiff's burden").

In order for Plaintiffs to establish that this case warrants collective treatment, Plaintiffs must demonstrate that they are similarly situated to the putative opt-in persons to whom they seek to have this Court direct a notice of suit and an invitation to join this lawsuit. *See Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996); *Marsh*, 242 F. Supp. 2d at 1091 ("Plaintiffs have the burden of demonstrating a reasonable basis for crediting the assertion that aggrieved individuals exist in the class they propose"). Although courts have held that the burden on Plaintiffs is "lenient" at the first step of the notice stage, the Court should consider all of the evidence before it in reaching a decision. *See Ray v. Motel 6*, No. 3-95-828, 1996 U.S. Dist. LEXIS 22565, 4 Wage & Hour Cas. 2d (BNA) 573, 576 (D. Minn. Mar. 18, 1996) (where the facts before the court were extensive, there was no need for discovery in order to reach a determination). Because Plaintiffs' motion does not establish that the class of individuals they seek to serve with notice are "similarly situated" to Plaintiffs, their Motion should be denied.

**(1)    Plaintiffs have the burden to demonstrate that they are "similarly situated" to the putative class members.**

As noted above, judicial authorization of class notice pursuant to a motion for collective treatment brought under the FLSA is not automatic, because an employer should not be "unduly burdened by a frivolous fishing expedition conducted by Plaintiff at the employer's expense." *D-Anna*, 903 F. Supp. at 894. Courts have the "responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation." *Freeman*, 256 F. Supp. 2d at 944 (quoting *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 266-67 (D. Minn. 1991)).    Accordingly, Plaintiffs carry the burden of establishing that they and members of the class that they wish to represent are "similarly situated," and that such individuals desire to opt into the action, before the court may authorize issuance of notice of a collective action. *See Harper v. Lovett's Buffet Inc.*, 185 F.R.D. 358, 362 (M.D. Ala. 1999) ("plaintiffs have the burden of demonstrating a reasonable basis for crediting their assertions that aggrieved individuals exists in the broad class that they propose."); *Haynes*, 696 F.2d at 887.    Without such a showing, section 216(b) would not further the interests of judicial economy and would present a ready opportunity for abuse. *Marsh*, 242 F. Supp. 2d at 1093.

Even where potential class members are identified, Plaintiffs must make some factual showing suggesting how those potential plaintiffs are similarly situated. *See Housden*, 186 F.R.D. at 400 (citing *D'Anna*, 903 F. Supp. at 894).

Conclusory affidavits are insufficient to carry Plaintiffs' burden. *Id*. at 400-01. Plaintiffs are required to make "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan" related to Plaintiffs' allegation that MIQ improperly classified its team members as exempt employees. *See id*.; *Basco v. Wal-Mart Stores, Inc.*, No. 00-3184, 2004 U.S. Dist. LEXIS 12441, at *7-*8 (E.D. La. July 2, 2004) (denying plaintiffs' motion for collective treatment where there was no single policy at issue that was uniformly or systematically implemented at any given store, and where there was no evidence that the policies at issue were applicable to stores in other geographic areas). Courts have denied motions for collective action seeking to certify a nationwide class of employees where, as here, there is no evidence of a nationwide illegal policy involving the alleged claims, and where the case involves a number of different managers at different geographical locations across the country.[5] *See*, *e.g.*, *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 511 (M.D. La. 2005). Plaintiffs have simply failed to present evidence sufficient to demonstrate that all of MIQ's team members were subject to a single decision, policy, or plan that was inconsistent with their classification as exempt employees.

**(2)  Unverified, conclusory allegations are insufficient to satisfy Plaintiffs' burden.**

---

[5] Furthermore, to the extent Plaintiffs seek certification a nationwide class, certifying national plaintiffs would be inappropriate considering the Alabama state common-law claims Plaintiffs seek to add in their proposed Amended Complaint.

Courts have refused to authorize the requested notice if the movant's allegations are broad and vague and the motion provides only meager factual support. *D-Anna*, 903 F. Supp. at 894; *see also Haynes*, 696 F.2d at 887 (properly rejecting plaintiff's request for class notice where plaintiff offered only unsupported assertions of widespread FLSA violations). In order to prevent fishing expeditions and to insure against improper solicitations by plaintiffs' counsel, courts will not authorize class notice where only conclusory allegations are offered. *See Severtson*, 137 F.R.D. at 266 (holding that conclusory allegations in the complaint, standing alone, are an insufficient basis for determining whether sending court authorized notice is appropriate); *D-Anna*, 903 F. Supp. at 894 (holding that the mere listing of names, without more, is insufficient absent a factual showing that the potential plaintiffs are similarly situated).

Instead, courts require evidence that there is some factual basis for plaintiff's claims of class-wide discrimination before judicial approval of the sending of notice may be granted. *Severtson*, 137 F.R.D. at 267. To meet this standard of proof, Plaintiffs must submit evidence establishing at least a sufficient factual basis for their claim that a class of similarly situated plaintiffs exist. *Brooks*, 164 F.R.D. at 567; *see also Dybach*, 942 F.2d at 1567-68 (noting that the district court should satisfy itself that there are other employees who desire to opt-in and who are similarly situated with respect to their job requirements and with

regard to their pay provisions); *D-Anna*, 903 F. Supp. at 893 ("there must be, at a minimum, evidence of such a potential class sufficiently developed at this time to allow court-facilitated class notice."); *Wertheim v. Arizona*, 1992 WL 566321 (D. Ariz. 1992) (noting that the court need not authorize notice to the broadest possible class of plaintiffs based solely on plaintiff's unsupported allegations, and declining to make even a preliminary determination of whether the potentially huge of number of putative opt-in plaintiffs are or may be similarly situated to the plaintiff).

Courts in a number of jurisdictions have refused to blindly authorize notice on the basis of unsupported, conclusory allegations.  *See Tucker v. Labor Leasing, Inc.*, 872 F. Supp. 941, 948 (M.D. Fla. 1994) (refusing to issue notice to employees at other terminals where no evidence was offered regarding the duties these individuals performed at their respective terminals); *Harper*, 185 F.R.D. at 363 (noting that while plaintiffs presented evidence that FLSA violations may exist with regard to certain hourly wage employees at defendant's Dothan restaurant, there was a total dearth of factual support for plaintiffs' allegations of widespread wrong-doing at defendant's other restaurants).  In addition, courts have held that collective actions are not appropriate where, as here, the putative class members are employed at different work locations under different managers, or where, as here, the putative class members work varying amounts of hours and are employed

in a number of different regions across several states. *Id.* at 362-63; *Ray*, 4 W & H Cas. 2d 573. In sum, Plaintiffs' unverified, conclusory allegations regarding the overly broad proposed opt-in class are insufficient to satisfy their burden at the notice stage.

### (3)    Plaintiffs have not establish that others desire to opt-in.

Before a court can authorize notice, Plaintiffs must first establish that other individuals desire to opt-in to the case. *See Dybach*, 942 F.2d at 1567-68. Such a showing must be made <u>before</u> notice is authorized. *Id.*; *Mackenzie v. Kindred Hosp. E., L.L.C.*, 276 F. Supp. 2d 1211, 1220-21 (M.D. Fla. 2003); *Brooks,* 164 F.R.D. at 566. This requirement can be met by Plaintiffs only if they demonstrate a reasonable basis for crediting the assertion that aggrieved individuals exist in the class proposed. *See*, *e.g.*, *Marsh*, 242 F. Supp. 2d at 1091 (citing *Haynes*, 696 F.2d at 887). "Courts have been clear . . . that a plaintiff's mere stated belief in the existence of other employees who desire to opt-in is insufficient." *Horne*, 279 F. Supp. 2d at 1236. Likewise, "unsupported expectations that additional plaintiffs will subsequently come forward" are insufficient. *Mackenzie*, 276 F. Supp. 2d at 1220; *see also Davis*, 303 F. Supp. at 1276 (stating that plaintiffs "must introduce more than their own statements that other potential class members exist"); *Horsden*, 186 F.R.D. at 400 (finding unsupported allegations of widespread FLSA violations by two plaintiffs insufficient).

Plaintiffs' Motion, brief, and evidentiary materials contain no evidence whatsoever that any others wish to opt-in.  The two named-Plaintiffs and three individuals who submitted declarations make no mention of any knowledge that others wish to opt-in.  Instead, Plaintiffs simply gloss over this essential requirement by suggesting that they satisfy this burden because the lawsuit previously had two plaintiffs, and Plaintiffs now have moved the Court to allow them to add three more.  The fact that five individuals have sued fails to establish that <u>others</u> wish to opt-in.  *See Saxton v. Title Max of Ala., Inc.,* 431 F. Supp. 2d 1185, 1187 n.2 (N.D. Ala. 2006) ("Similarly unpersuasive on the issue of opt-in interest is the number of plaintiffs joined in this case, as such litigants are ineligible to opt-in to a collective action.")  The law is well-established that "unsupported expectations that additional plaintiffs will subsequently come forward" are insufficient.  *Mackenzie,* 276 F. Supp. 2d at 1220; *see also Davis,* 303 F. Supp. 2d at 1276 (Plaintiff "must introduce more than [her] own statements that other potential class members exist"); *Housden,* 186 F.R.D. at 400 (finding unsupported allegations of widespread FLSA violations by two plaintiffs insufficient).  Here, Plaintiffs failed to establish even an expectation that others will join the instant case.

> **(4)    Plaintiffs failed to satisfy their burden of showing that all current and former team members are similarly situated to Plaintiffs.**

Furthermore, Plaintiffs have not identified a class of individuals that can properly be considered "similarly situated" for purposes of potentially participating as plaintiffs here.  District courts have the power to authorize sending notice to potential "class" members in a collective action under § 216(b), but the power to authorize notice must be exercised with discretion and only in appropriate cases. *See Haynes,* 696 F.2d at 886; *Holt,* 333 F. Supp. 2d at 1268.  For notice to be authorized, plaintiffs must make some rudimentary showing of commonality between the basis of their claims and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions. *Id*. at 1270 *(citing Marsh,* 242 F. Supp. 2d at 1093; and *White v. Osmose,* 204 F. Supp. 2d 1309, 1314 (M.D. Ala. 2002)).

Courts are required at the notice stage to examine both the facts and the merits to determine whether the proposed collective is similarly situated to the named Plaintiffs.  *See Dybach,* 942 F.2d at 1567-68 (holding potential opt-ins must be similarly situated with respect to their job requirements and pay provisions); *Holt*, 333 F. Supp. 2d at 1272 (examining similarly situated status based on factual and legal issues at notice stage); *Harper,* 185 F.R.D. at 362-63 (finding that employees in other restaurants working under different management personnel were not similarly situated); *Brooks*, 164 F.R.D. at 566-69 (denying court-authorized notice because the "claims of the proposed opt-in plaintiffs would

present disparate factual and employment settings" and "the specific circumstances of the former employees are notably diverse"), *aff'd*, 114 F.3d 1202 (11th Cir. 1997).  As acknowledged in *Holt*, "[w]ithout such a requirement, it is doubtful that § 216(b) would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse." *Holt*, 333 F. Supp. 2d at 1270.

Neither Plaintiffs' motion nor their conclusory allegations establish the existence of any such "similarly situated" individuals.  Plaintiffs describe the potential class as ***"all present employees and former employees*** that worked for [MIQ] within the last three years."  This "class" would approximate hundreds of employees from several different facilities across the country.  Moreover, the individual members of the class would have worked for a number of different managers in different districts of the company and would have been held to different work standards, working conditions, and terms of employment depending on the particular facilities in which the employees worked (*See* Exhibit A at ¶ 6).[6]

The two named-Plaintiffs in the instant lawsuit are former Team Members at MIQ's Montgomery facility (Exhibit A at ¶ 5).  Two of the individuals that Plaintiffs seek to add are Team Leaders (*Id.*).  As such, they have no personal

---

[6] Courts have routinely rejected proposed classes in nearly identical circumstances to those presented by Plaintiffs' Motion.  For example, in *Harpers v. Lovett's Buffet, Inc.*, 185 F.R.D. 258, 262-63, the court rejected the plaintiff's request to certify a class of all hourly employees employed at all of the defendant's restaurants in the Southeast despite the plaintiffs' contention that the defendant had a centralized policy resulting in widespread FLSA violations.  In rejecting this broadly defined class, the court emphasized that "while Plaintiffs have presented evidence that FLSA violations may exist with regard to certain hourly employees at Defendant's Dothan restaurant, *there is a total dearth of factual support for Plaintiffs' allegations of widespread wrongdoing at Defendant's other restaurants.*" *Id*. at 263 (emphasis added).  Such is the state of the evidence before the Court in this case.

knowledge of the duties and responsibilities performed by MIQ's Team Members and/or Team Leaders employed in other geographic regions and under the supervision or management of others for whom Plaintiffs <u>never</u> worked (*See id.*). Plaintiffs' unsupported, conclusory allegations about the nature of the job duties allegedly performed by others at other facilities do not establish the existence of "similarly situated" individuals for purposes of notice under section § 216(b). *See Severtson*, 137 F.R.D. at 266; *D-Anna*, 903 F. Supp. at 894; *see also Reed v. Mobile County Sch. Sys.*, 246 F. Supp. 2d 1227 (S.D. Ala. 2003) (holding that conditional certification of all non-exempt employees is overly broad and rejecting, as a matter of law, the proposition that every non-exempt employee is necessarily similarly situated to every other non-exempt employee); *Freeman*, 256 F. Supp. 2d 941 (holding that a class of salaried employees below officer level were not similarly situated). Plaintiffs simply offer no evidence in support of their claim that MIQ Team Member or Team Leader employees across the country are "similarly situated" to Plaintiffs.

Furthermore, the applicable law is clear that employees are not "similarly situated" under the FLSA merely because they share the same job title. *See Reich v. John Alden Life Ins. Co.*, 126 F.3d. 1 (1st Cir. 1997) (noting that the particular title given to an employee is not determinative, as an employee's exempt status must instead be predicated on whether his duties or responsibilities met all of the

applicable regulatory requirements); *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493 (D. N.J. 2000) (noting that exempt status would likely have to be determined on an employee by employee basis in part because three of the seven individual plaintiffs hold the title Technical Analyst, yet their job duties vary substantially).   As indicated in the Affidavit of Chris Henry, former Facility Manager at MIQ's Montgomery, Alabama facility, there was no written policy at MIQ requiring the Team Members and/or Team Leaders to work particular hours (*See* Exhibit A at ¶ 6).   Instead, the specific job duties of MIQ's employees were dictated in this regard by the local Facility Manager  (*Id.*).   As such, each local facility was operated differently, and the job duties of Team Members and Team Leaders in the Montgomery facility are not necessarily the same job duties held by these same positions at other MIQ facilities.

There is no evidence whatsoever of an alleged policy with respect to any Team Members or Team Leaders at or outside the Montgomery, Alabama facility. The named-Plaintiffs are not similarly situated to other Team Members who worked at different facilities, in geographically separate and diverse locations, at different time periods, and reported to different supervisors.  *Reed,* 246 F. Supp. 2d at 1232 (examining as part of similarly situated analysis, whether the potential opt-ins worked at different geographic locations and the extent to which the claimed violations occurred during different time periods and by different decision makers).

Plaintiffs do not limit their certification request to any particular facility or geographic location, and there is no evidence that all other Team Members were subject to the particular job requirements asserted in Plaintiffs' pleadings.

Furthermore, to the extent Plaintiffs have demonstrated that all Team Members (dock workers) at MIQ's Montgomery, Alabama facility are "similarly situated," Plaintiffs have largely identified and included the majority of these individuals, and Plaintiffs' Motion should be denied as moot. Nevertheless, because Plaintiffs' Motion is wholly unsupported by the evidence they have presented, they cannot carry their burden of proving that the putative class members are "similarly situated" to Plaintiffs, and their Motion to Facilitate Class Notice must therefore be denied.[7]

## B.    This Case Requires Individualized Inquiries Under the FLSA

Finally, the subject matter of this lawsuit is not appropriate for collective treatment because common fact issues do not predominate Plaintiffs' claims. Instead, this case requires individualized inquiries under the FLSA. The FLSA regulations state that "the exempt or non-exempt status of *any particular employee* must be determined on the basis of whether his duties, responsibilities and salary

---

[7] Moreover, this Court should decline to reform Plaintiffs' Motion to a more narrow class and such reformation is not appropriate. It is Plaintiffs' burden to identify the class they seek to represent and to demonstrate that the proposed class is similarly situated to them in the first instance. *See Freeman*, 256 F. Supp. 2d at 945 (it is incumbent upon the plaintiff to propose a sufficiently defined and manageable class from the outset; denying motion for class certification). Rather than seeking to represent a properly defined class of similarly situated employees, the named Plaintiffs engaged in gross overreaching and do not seek to represent a class supported by the evidence presented. As a result, Plaintiffs' Motion should be denied. *See id.*; *Horne*, 279 F. Supp. 2d 1231 (denying plaintiff's motion to facilitate or, in the alternative, for partial notice in its entirety); *D'Anna*, 903 F. Supp. at 894.

meet all the specific requirements of the appropriate section of the regulations . . ."

29 C.F.R. § 542.201(b)(2) (emphasis added).  *See Holt*, 333 F. Supp. 2d at 1272

("[T]the 'similarly situated' inquiry in this case must be analyzed in terms of the

nature of the job duties performed by each putative plaintiff, because the ultimate

issue to be determined is whether each employee was properly classified as

exempt."); *see also Ale v. Tenn. Valley Auth.*, 269 F.3d 680, 689 (6th Cir. 2001)

(noting determination of exempt status requires a focus on each employee's actual

job duties); *cf. Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1235-36

(11th Cir. 2000) (holding individualized facts necessary to establish liability for

each plaintiff precluded class certification); *Jackson v. Motel 6 Multi-Purpose,*

*Inc.*, 130 F.3d 999, 1006 nn. 12-13 (11th Cir. 1997) (same).

Plaintiffs claim that they and all other MIQ Team Members were improperly

denied overtime under the FLSA.  As outlined in Section I(B) of this Response, the

Federal Motor Carrier Act exempts from the overtime requirements of the FLSA

any individual involved in activities affecting the safety of operation of a motor

vehicle in the transportation of passengers or property in interstate commerce who

are subject to the power of the Department of Transportation.  29 U.S.C. § 213(b).

By their very nature, evaluation and assessment of the Motor Carrier Exemption

requirements mandate individualized inquiries that, in this case, are incompatible

and inconsistent with collective treatment.

As explained above, the exemption applies to employees who are (1) employed by a motor carrier, (2) drivers, helpers, loaders, or mechanics whose duties affect the safety of operation of commercial vehicles in interstate commerce, and (3) performing duties on commercial motor vehicles.[8]  29 C.F.R. § 782.  The assessment of whether each Plaintiff falls within this particular exception demands a case-by-case inquiry into the individual's job duties to determine whether his duties fall within the scope of the regulation.

Accordingly, this Court's inquiry into the merits of Plaintiffs' claims requires a determination of several individualized issues, including: (1) whether the plaintiff was a driver, helper, loader, or mechanic, (2) whether the plaintiff worked on vehicles involved in interstate commerce, (3) whether the plaintiff's job duties affected the safety of operation of the vehicles on which he worked, and (4) the amount of discretion each plaintiff was afforded in performing his job duties.  Each plaintiff would also have to present evidence as to his hours worked, the nature of his individual duties, and the frequency in which he performed each particular task.  Furthermore, Plaintiffs' negligent hiring, training, supervision and retention claim is brought under state law, and the legal elements of this cause of action vary state-by-state (*See* Amended Complaint at ¶¶ 27-30).  Accordingly, such a claim will vary factually between plaintiffs, who each worked at different facilities and under

---

[8] Plaintiffs themselves acknowledge their individual jobs "consisted of loading and unloading goods at [MIQ]'s Montgomery, Alabama warehouse."  *See, e.g.,* Affidavit of Larry King, at 1.

different managers. Because of the nature of the Court's analysis of Plaintiffs' FLSA claims and the elements of Plaintiffs' negligence claims, individual issues as to each putative plaintiff's claim would predominate in this case, and the disposition of one plaintiff's claim would not necessarily resolve any other.

Plaintiffs themselves acknowledge that "many of [their] claims will turn on questions of fact that can only be developed after merit based discovery" (Brief at 12). For example, Plaintiffs' allegation that Defendant(s) misrepresented information to Plaintiffs, and that Plaintiffs relied on the information to their detriment, will require detailed, individualized inquiries into the specifics of the alleged representations and each plaintiff's reliance and harm (*See* Amended Complaint at ¶ 19). Such an allegation would demand a facility-by-facility, plaintiff-by-plaintiff inquiry into the alleged statements at issue. Furthermore, Plaintiffs' allegation that each of them has suffered embarrassment, mental anguish, and other emotional damages requires a factually specific inquiry into each plaintiff's alleged damages.

Courts have denied collective or class treatment in cases requiring individualized factual inquiries. *Cf. Mike v. SafeCo Ins. Co.*, 274 F. Supp. 2d 216, 220 (D. Conn. 2003) ("Determining whether an employee is exempt is extremely individual and fact-intensive . . ." (citation omitted)); *Rutstein*, 211 F.3d at 1235-36 (holding individualized facts necessary to establish liability for each plaintiff

precluded class certification); *Jackson*, 130 F.3d at 1006 nn. 12-13 (same).  As recognized by the court in *Bayles v. Am. Med. Response of Colo., Inc.*, 950 F. Supp. 1053 (D. Colo. 1996), allowing collective treatment where individualized inquires are necessary does not enhance judicial economy or efficiency and creates a risk of prejudice to the Defendant.  *See also Mooney v. Aramco*, 1993 WL 739 661 (S.D. Tex. 1993), *aff'd*, 54 F.3d 1207 (5th Cir. 1995).  Here, a determination as to whether a particular employee was properly classified as an exempt employee under the Federal Motor Carrier Act requires an individualized inquiry into the nature of the employee's work performed, the amount of time that the particular employee spent in each work activity at issue, and the particulars of their individual allegations against MIQ, which defeats collective treatment.  Further, because Plaintiffs have now brought other state law allegations that require factually specific inquiries, collective treatment is not appropriate in this lawsuit, and Plaintiffs' Motion should be denied.

## IV.  EVEN IF THE COURT CERTIFIES A CLASS, IT SHOULD DENY PLAINTIFFS' REQUEST FOR NOTICE

Even if the Court decides to conditionally certify a class in this case, it still has the discretion to decide whether to allow Plaintiffs' counsel to issue a class-wide notice.  *Freeman*, 256 F. Supp. 2d at 944 ("although a district court has discretion to authorize notice to similarly situated employees . . . the giving of such

notice is not mandatory"). The question is whether this is a proper case in which to issue notice. *Hall*, 2002 WL 413901, at *2. Furthermore, the Court should consider the unnecessary risk of additional litigation that would be created by issuing notice. *See Horne*, 279 F. Supp. 2d at 1234 (quoting *Brooks*, 164 F.R.D. at 567); *see also Freeman*, 256 F. Supp. 2d at 944 (citing *Severtson*, 137 F.R.D. at 266-67); *Hall*, 2002 WL 413901, at *3. As demonstrated above, because the issues in this case require individualized inquiries into each Plaintiff's claim, this case is not appropriate for class-wide notice. Alternatively, if this Court does decide that it is appropriate to issue notice, the scope of that notice should be limited to similarly situated putative class members based upon the evidence presented. *See*, *e.g.*, *Camper v. Home Quality Mgmt. Inc.*, 200 F.R.D. 516, 520-21 (D. Md. 2000); *Tucker*, 872 F. Supp. at 949.

Finally, the potential risk of needless litigation and the potential perception of bias based upon the language of the notice requires the Court to approve any notice that is to be sent to potential opt-in plaintiffs. *See*, *e.g.*, *Villatoro v. Kim Son Restaurant, L.P.*, 286 F. Supp. 2d 807, 812 (S.D. Tex. 2003) (ordering parties to submit a revised proposed notice to the court). Moreover, any notice issued in this case should contain a statement of Defendant's position on the issues. *See Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 239 (N.D.N.Y. 2002). As such, MIQ respectfully requests that, if the Court orders notice to be issued, it

require MIQ and Plaintiffs to agree on the language of such notice to potential opt-in plaintiffs and that the disputes regarding that language be resolved by the Court. MIQ further requests that the Court approve any such notice and set a specific and limited time limit for the filing of opt-in consents.

## V.  CONCLUSION

Plaintiffs can neither establish that other employees wish to opt-in to this action, nor can they establish that others are similarly situated with regard to their job duties and pay provisions.  For all of the reasons asserted herein, the factual and legal issues overwhelmingly show that this case is inappropriate for treatment as a collective action, and Plaintiffs' Motion to Facilitate Class Notice should be denied.

WHEREFORE, Defendant respectfully requests that Plaintiffs' Motion to Facilitate Class Notice be denied, and that this Court grant such other relief, at law or equity, to which it may be entitled.

Respectfully submitted,

/s/ T. Matthew Miller
    Charles A. Stewart, III
    T. Matthew Miller
    Angie R. Rogers
    Attorneys for Defendant

<u>OF COUNSEL</u>
Bradley Arant Rose & White LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8000
Facsimile: (205) 521-8800

Alabama Center for Commerce
401 Adams Avenue Suite 780
Montgomery, Alabama 36104
Telephone: (334) 956-7700
Facsimile: (334) 956-7701

Shauna Johnson Clark, *Pro Hac Vice*
Cathryn Lynn Blaine, *Pro Hac Vice*
Kelley Edwards, *Pro Hac Vice*
Fulbright & Jaworksi, L.L.P.
Fulbright Tower
1301 McKinney, Suite 5100
Houston, Texas 77010

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 2, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jere L. Beasley
Beasley Allen Crow Methvin Portis & Miles, PC
272 Commerce Street
P.O. Box 4160
Montgomery, AL 36103-4160

Wilson Daniel Miles, III
Beasley Allen Crow Methvin Portis & Miles, PC
272 Commerce Street
P.O. Box 4160
Montgomery, AL 36103-4160

Larry A. Golston
Beasley Allen Crow Methvin Portis & Miles, PC
272 Commerce Street
P.O. Box 4160
Montgomery, AL 36103-4160

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:
None.

/s/ T. Matthew Miller

# EXHIBIT A

## AFFIDAVIT OF CHRIS HENRY

| | |
|---|---|
| THE STATE OF CALIFORNIA | § |
| | § |
| COUNTY OF SAN BERNARDINO | § |

On this day Chris Henry, the affiant, appeared in person before me, a notary public, who knows the affiant to be the person whose signature appears on this document, and stated:

"1.     My name is Chris Henry.  I am over twenty-one years of age, of sound mind, have never been convicted of a felony, and am competent in all respects to make this affidavit.  The facts stated herein are within my personal knowledge and are all true and correct.

2.     I am currently employed at YRC Logistics, formerly known as Meridian I.Q. Services Inc. ("MIQ"), as the Facility Manager for the Fontana, California location.  During all relevant periods set forth herein, I served as Interim Facility Manager of MIQ's Montgomery, Alabama facility from January 1, 2007 until July 13, 2007 when the facility closed.  After the facility's closure, my role with respect to the Montgomery, Alabama facility has been limited to follow up regarding any issues related to that facility.  As Interim Facility Manager for the Montgomery facility, I was responsible for managing the daily operations of the facility and supervising all facility employees, including Team Members and Team Leaders.  Team Members and Team Leaders are essentially dock worker positions.  Based on my duties as Interim Facility Manager, I have personal knowledge of all the facts stated herein.

3.     DeShawn Bailey, Preston Traylor, and Larry King (collectively "Plaintiffs") were employed as either Team Members or Team Leaders under my supervision.  Team Leaders were used to train Team Members.  Both Team Leaders and Team Members were responsible for the loading and unloading of route trailers.  Plaintiffs were given a route planner and target times for each delivery; Plaintiffs then had the responsibility for loading the trailers so that weight was properly distributed and freight was loaded in a safe and secure manner.  Plaintiffs exercised their own discretion on how to place freight in the trailer so that it was properly distributed and contributed to the safe operation of the vehicle.  At times, Plaintiffs were given instructions on the ordering of freight to be placed in the trailer, but Plaintiffs would then load the trailer based on their own discretion so that it was distributed properly and would not be damaged during transit.  Plaintiffs also unloaded inbound trailers which came in from various origins from around the country.  Plaintiffs would then sort and segregate the freight to direct it to the correct destinations.  Plaintiffs also palletized the freight to prepare it for shipment.  At times, Team Leads would instruct Team Members on proper stacking of cartons on a pallet.  Otherwise, Plaintiffs used discretion on how to create pallets and load the trailers to distribute the freight in a safe manner.

4.     YRC Logistics currently has thirteen facilities nationwide.  Each facility is under the management of a Facility Manager.  Each Facility Manager reports to the Director of Operations assigned to the region in which their facility is located.

5.      Larry King, DeShawn Bailey, Preston Traylor worked at the Montgomery facility while I was the Interim Facility Manager.  Larry King was a Team Member and DeShawn Bailey and Preston Traylor were Team Leads.  Based on a review of company records, Javaris Vandiver was also employed as a Team Member in the Montgomery, Alabama facility for approximately two months in 2006.  To my knowledge, none of these individuals worked at any other MIQ facility.  Further, the Montgomery facility was the only MIQ facility in Alabama.

6.      At the Montgomery, Alabama facility, the work schedules for Team Leaders and Team Members were based on customer need and volume and frequently varied.  Each Facility Manager is allowed discretion over the job duties of the employees assigned to him or her and the job duties are altered based on the site, freight volume, and customer need.  As each MIQ facility performs slightly different functions, the job duties of Team Members and Team Leaders, *i.e.* dock workers, varies between locations.

Further affiant sayeth not."

Chris Henry

SUBSCRIBED AND SWORN TO before me on ⎸st. November , 2007.

Robert Anthony Muratalla
Notary Public in and for
the State of California

Printed Name of Notary

```
ROBERT ANTHONY MURATALLA
Commission # 1553333
Notary Public - California
Orange County
My Comm. Expires Feb 17, 2009
```

My Commission Expires: 17 February 2009